### UNITED STATES of America, Plaintiff–Appellee,

### v.

### Lorenzo Alberto SUKIZ–GRADO, Defendant–Appellant.

No. 93–2217.

United States Court of Appeals, Tenth Circuit.

April 26, 1994.

William D. Fry, Asst. Public Defender (Kurt J. Mayer, Asst. Public Defender, on the brief), Las Cruces, NM, for defendant-appellant.

Kelly H. Burnham, Asst. U.S. Atty. (John J. Kelly, U.S. Atty., with him on the brief), Las Cruces, NM, for plaintiff-appellee.

Before WHITE, Associate Justice (Ret.) *
SEYMOUR, Chief Judge, and MOORE,
Circuit Judge.

SEYMOUR, Chief Judge.

Lorenzo Sukiz–Grado entered a conditional guilty plea to possessing less than fifty kilograms of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D). He was sentenced to twenty-one months imprisonment and three years of supervised release. On appeal, Mr. Sukiz contends that his Fourth Amendment rights were violated when border patrol agents directed him to a secondary inspection area at a permanent checkpoint for further detention, that a dog search of his car interior was not supported by probable cause, and that the court committed reversible error in refusing to give him a two-point reduction for his role in the offense. We affirm.

### I.

Mr. Sukiz was driving alone when he was stopped at the permanent checkpoint at Alamogordo, New Mexico. The agent on duty at the primary inspection area testified at the suppression hearing that when he asked Mr. Sukiz about his citizenship, Mr. Sukiz showed "a fairly extreme degree of nervousness." Rec., vol. IV, at 3. Mr. Sukiz did not make eye contact with the agent, swallowed hard, and gulped a lot when answering. The agent walked toward the back of the vehicle and noticed that it had a temporary license tag. He considered this fact significant because smugglers often use temporary tags. He asked Mr. Sukiz if the car were his, and Mr. Sukiz said it belonged to a friend. The agent asked Mr. Sukiz his destination. Mr. Sukiz responded that he was going to visit his sister in Alamogordo, although he was unsure where she lived. The agent then asked Mr. Sukiz for permission to walk a dog around the car. Mr. Sukiz consented and the agent directed him to the secondary inspection area. Mr. Sukiz was in the primary inspection area for less than two minutes.

The agent was a trained canine handler and was certified as a team with his trained dog. The agent got the dog from his kennel and started toward the car. As they approached the car, he noticed a definite change in the dog's behavior, testifying that the dog "showed signs of a good alert." *Id.* at 7. After sniffing the driver's side door, the dog indicated by sitting next to the rear door that he wanted to get into the car. This exterior sniff took less than one minute. The agent opened the car door to allow the dog to enter the car. The dog then sniffed along the top of the back seat area and again indicated the presence of narcotics. A subsequent search revealed bundles of marijuana hidden behind the rear portion of the back seat.

### II.

▮▮▮ Mr. Sukiz first contends that the agent's questions at the primary inspection area went beyond routine inquiry and were not designed to dispel suspicious circumstances. He argues that his referral to the secondary inspection area was therefore improper. We disagree. It is true that "[a] routine checkpoint stop must be brief and unintrusive." *United States v. Rascon–Ortiz*, 994 F.2d 749, 752 (10th Cir.1993). We have held that a routine stop includes a cursory visual inspection of the vehicle, however, as well as brief questions concerning vehicle ownership, destination, and travel plans "if reasonably related to the agent's duty ... to prevent the smuggling of contraband." *Id.* Moreover, an agent may ask a motorist to explain suspicious circumstances which the agent has identified by relying on his training and experience. *Id.* at 752–53. "The presence of a suspicious circumstance allows a border patrol agent to ask a few additional questions concerning the suspicion during the course of a routine customs inspection." *Id.* at 753 n. 6. The questions that the agent asked Mr. Sukiz during his two-minute detention at the primary inspection area clearly fall within the ambit of

* The Honorable Byron R. White, Associate Justice of the United States Supreme Court (Ret.), sitting    by designation.

routine inquiry or were justified by the suspicious circumstances observed by the agent.

■ The agent's decision to refer Mr. Sukiz to a secondary inspection area was not illegal. "[A]s long as the scope of the inquiry is appropriate," agents have "virtually unlimited discretion to selectively refer cars to the secondary inspection area." *United States v. Ludlow*, 992 F.2d 260, 263–64 (10th Cir.1993). In addition, it is undisputed that Mr. Sukiz consented to the dog sniff of the car exterior. In so doing, he "consented to the resulting brief detention." *United States v. Chavira*, 9 F.3d 888, 889–90 & n. 1 (10th Cir.1993).

## III.

■ Mr. Sukiz also argues that the dog search of the inside of the car was unlawful. An "agent may not unlawfully enter an area in order to conduct a dog search." *United States v. Ludwig*, 10 F.3d 1523, 1527 n. 1 (10th Cir.1993). The warrantless entry of a car interior is unlawful unless there is probable cause to believe it contains contraband. *Id.* at 1528. Mr. Sukiz contends that probable cause was lacking here.

■ The district court found that "the dog walked around the car, [and] alerted sufficiently outside the car to where the agent had probable cause to allow the dog in the car to search further." Rec., vol. IV, at 51. Our review of the record establishes that this finding is not clearly erroneous. The agent testified that the dog showed alert behavior immediately, that the dog was trained to sit when he got as close to the substance as he could, and that by sitting next to the rear driver's side door the dog was indicating that he was as close as he could get to the contraband in the car. The agent further testified that the dog gave both an indication and an alert before the agent let him into the car. *Id.* at 1528. Accordingly, the search of the car interior was supported by probable cause based on the dog's behavior outside the car. *See Ludwig*, 10 F.3d at 1527–28 (dog alert gives probable cause).

## IV.

Finally, we address Mr. Sukiz' argument that he should have been given a two-point reduction for his role as a minor participant. A finding that a defendant is or is not a minor participant is a fact finding that we must accept unless clearly erroneous. *United States v. Arredondo–Santos*, 911 F.2d 424, 425 (10th Cir.1990). Mr. Sukiz contends both that the court was clearly erroneous and that it misapplied the guidelines by failing to consider his status as a courier.

■ There is no legal requirement that the court state reasons for refusing to give a courier a reduction for being a minor participant. *See United States v. Donaldson*, 915 F.2d 612, 615 & n. 1 (10th Cir.1990). Thus, the court's failure to specifically address the allegedly undisputed fact that Mr. Sukiz was a courier is not reversible error so long as the record contains evidence to support the court's finding that he was not a minor participant. *Id.* "[D]rug couriers, allegedly under the direction of others, are not necessarily minor participants...." *Id.* at 615; *Arredondo–Santos*, 911 F.2d at 426. In refusing to grant the adjustment, the court here relied on the presentence report, which reported that no documentation supported Mr. Sukiz' description of the facts underlying his role as a courier. We have said that in order to weigh relative culpability, "evidence must exist of other participants and their role in the criminal activity." *Arredondo–Santos*, 911 F.2d 426. Moreover, as the lower court noted, the report also reveals that Mr. Sukiz was previously convicted of a drug offense which involved bringing bricks of marijuana across the border concealed in a vehicle. On the basis of this record, the court's finding that Mr. Sukiz was not entitled to a minor-participant reduction is not clearly erroneous.

AFFIRMED.